**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JAMES COLLINS | § | |
| *Plaintiff*, | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| | § | |
| **ENVIRONMENTAL** | § | **Complaint & Jury Demand** |
| **DEFENSE FUND** | § | |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |

**COMPLAINT AND JURY DEMAND**

Plaintiff James Collins ("*Plaintiff* " or "Mr. Collins"), by and through his undersigned counsel, brings this action against Defendant Environmental Defense Fund ("*Defendant*" or "EDF"), 38 U.S.C. §§ 4301-4335 and related New York state laws. Plaintiff alleges that Defendant willfully engaged in discrimination, hostile work environment harassment, and retaliation against him on the basis of his military service in the United States Coast Guard Reserve, and alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters as follows:

**INTRODUCTION**

1. This is an action brought under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. 38 U.S.C. §§ 4301-4335, and related New York state laws including New York Military Law §317 and New York Human Rights Law §§291-292, 296. Plaintiff alleges that Defendant willfully discriminated against him on the basis of his military service in the United States Coast Guard Reserve. This discrimination culminated in the unlawful constructive discharge resulting from Defendant's denial of Plaintiff's rights to the restored terms, conditions, privileges and promotional benefits of his employment in violation of federal and New York state law.

1

2. Plaintiff seeks compensatory damages, backpay, front pay, liquidated damages, equitable relief, attorneys' fees and costs, and all other relief available under federal and state law.

## NAMED PARTIES

3. Plaintiff James Collins is an individual and upon information and belief, is a resident of Bend, Deschutes County, Oregon. Plaintiff's address is 151 Southeast 16th Street, Bend, OR 97702.

4. Defendant Environmental Defense Fund is, upon information and belief, a business entity with its principal place of business located at 257 Park Avenue South, New York, New York 10010. Environmental Defense Fund may be served with process at its principal place of business or wherever it may be found.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, as the claims arise under USERRA, a federal statute, and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a).

6. Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), based on Defendant's residence and principal place of business and headquarters are located in this District.

## BACKGROUND

7. Plaintiff began his active duty military career in the United States Coast Guard in 2004 and served through 2009.

8. Plaintiff joined the United States Coast Guard Reserve in 2009 and remains in service through the present.

9. Plaintiff is a decorated O-6 Captain (select) in the United States Coast Guard Reserve with over twenty-two years of honorable military service, including service abroad as the Senior U.S. Defense Official and Defense Attaché for the Eastern Caribbean.

10. Plaintiff was hired by Defendant in August 2021 as a Post-Doctoral Fellow on a two-year contract and, less than a year later, promoted to a permanent full-time position on February 5, 2022, as a Staff Scientist based on his exceptional performance and the high quality of his work product.

11. Plaintiff was hired into a novel role as Marine Biogeochemical Scientist, under a position description crafted by Plaintiff at Defendant's direction, based on Defendant's recognition of Plaintiff's unique skillset and expertise.

12. Plaintiff was deployed and mobilized for military duties between October 2022 through October 2024.

13. On April 26, 2024, Plaintiff disclosed his intent to return to Environmental Defense Fund via email and phone call with his supervisor once he completed military service.

14. On or about September 2024, Defendant, by and through Associate Vice President of Oceans Science Kristin Kleisner ("Ms. Kleisner") Plaintiff's temporary replacement was hired as a full-time Biogeochemical Scientist after Plaintiff exercised his right to re-employment.

15. Plaintiff timely and formally notified Defendant of his intent and rights under USERRA to return to work through submission of an Application for Reinstatement to his position as a Marine Biogeochemical Scientist in October 2024.

16. Despite his exemplary performance and superior qualifications, Defendant stripped Plaintiff of the major functions of his role by assigning them to another employee who was hired

permanently despite Plaintiff's intent to return to work after his military service was complete, and Plaintiff was denied promotional and seniority benefits under the escalator principle.

17. Between September 2024 and March 2025, Plaintiff notified Defendant of ongoing USERRA violations and hostile work environment harassment based on military status by his immediate supervisor Ms. Kleisner.

18. On December 17, 2024, Plaintiff submitted a formal grievance to Human Resources regarding USERRA violations and hostile work environment and harassment, including an eliminated portfolio, Defendant's repeated failure to delineate the separation of duties between himself and his colleague, diminished responsibilities, downgraded performance evaluation, and Escalator Principle violations.

19. Plaintiff escalated the USERRA violations in his department to Chief Administrative Officer Sean Cook ("Mr. Cook"), Vice President of Global HR Elizabeth Mattila ("Ms. Mattila"), and Chief Scientist Steve Hamburg ("Mr. Hamburg").

20. Between February 2025 and March 2025, Defendant, by and through Ms. Kleisner, failed to implement a plan HR proposed to address Plaintiff's USERRA grievance, and the USERRA violations and hostile work environment and harassment continued.

21. Plaintiff notified Defendant on March 2025, that due to the continuing hostile and harassing work environment, and failure to remedy identified USERRA violations, he had no other choice but to resign effective April 4, 2025.

**STATEMENT OF FACTS**

22. At the time of Plaintiff's onboarding, Environmental Defense Fund was aware of Plaintiff's military service status.

4

23. From August 2021 until April 2025, Plaintiff was employed by Defendant in progressively more senior roles, including as a Post-Doctoral Fellow and then Marine Biogeochemical Scientist (Staff Scientist).

24. Plaintiff's responsibilities included leading Defendant's marine carbon-dioxide removal program; representation of Defendant at international conferences and engagements; representation of EDF on multiple high-level boards and panels convened by organizations including the World Climate Research Programme, American Geophysical Union and National Science Foundation; publication of multiple, peer-reviewed scientific research studies; engagement with EDF donors; and advisement to both external entities and the members of multiple departments within Defendant's organization on the technical, ethical and scientific aspects of multiple areas of marine and climate science.

25. Throughout Plaintiff's tenure, Defendant was fully and continuously aware of Plaintiff's military obligations.

26. Plaintiff performed military orders between October 2022 and October 2024 and provided Defendant timely and proper notification regarding his military orders.

27. Plaintiff participated in the hiring process to select a temporary backfill employee for his position, Mattias Cape ("Mr. Cape"), while Plaintiff was away on military orders between October 2022 and October 2024.

28. On April 26, 2024, Plaintiff disclosed his intent to return to Environmental Defense Fund via email and phone call with his supervisor once he completed military service.

29. Defendant informed Plaintiff on or about September 2024 that the temporary backfill employee Mr. Cape was hired as a full-time Marine Biogeochemical Scientist under the same job description and portfolio as Plaintiff.

30. On September 20, 2024, shortly before Plaintiff returned from military service, Mr. Cape contacted Plaintiff directly to discuss how projects and work should be divided between them upon Plaintiff's return; Defendant declined to provide Plaintiff with any plan for how responsibilities between himself and Mr. Cape would be divided upon Plaintiff's return from active-duty service.

31. On September 30, 2024, Plaintiff was honorably released from active-duty military service.

32. Plaintiff submitted a formal USERRA Application for Reinstatement to Defendant on October 1, 2024, with a proposed start date of October 7, 2024.

33. Plaintiff returned to work on October 8, 2024. During reorientation, Plaintiff discovered that his responsibilities were reduced and that Mr. Cape retained all of Plaintiff's portfolio of work, including projects Plaintiff originated upon creation of his role as Marine Biogeochemical Scientist.

34. Plaintiff alleges that the conversion of Mr. Cape from a temporary back-fill employee to a full-time employee assigning him Plaintiff's portfolio constructively stripped Plaintiff of his rights and privileges of re-employment under USERRA.

35. Plaintiff alleges that Defendant failed to carry its burden to designate separate work portfolios for Plaintiff and Mr. Cape and failed to delineate his responsibilities upon his return to work, despite multiple requests by Plaintiff for such a plan.

36. Plaintiff advocated for restoration of his portfolio and duties to reflect his responsibilities prior to his military leave to his supervisor Ms. Kleisner between October and November 2024.

37. On November 8, 2024, Ms. Kleisner notified Plaintiff that she would not submit his portfolio for promotion because he had "less to show" and had a "light package" because of his active-duty absence.

38. On November 26, 2024, Ms. Kleisner notified Plaintiff of a new tenure-style promotion process that would replace the existing procedure for the current performance review and promotion cycle.

39. On November 27, 2024, Plaintiff protested the decision by Ms. Kleisner not to advance his name for a promotion, as it violated the Escalator Principle under USERRA, and requested further review and approval of his portfolio for promotion.

40. Plaintiff had received "Exceptional" performance ratings for the 2021 and 2022 performance cycles. In connection with protesting the decision not to advance him, despite his exceptional performance ratings in the past, Plaintiff prepared an eight-page memorandum advocating for his own performance and contributions to EDF since his return to work, in addition to his military achievements, including development and implementation of an international climate security portfolio during his military leave which was directly related to Plaintiff's work at EDF.

41. On December 16, 2024, Ms. Kleisner acknowledged Plaintiff's eight-page memorandum, yet rated Plaintiff as "strong" rather than "exceptional."

42. Plaintiff submitted a formal complaint to Defendant's Human Resources professional, Jennifer Gastrich ("Ms. Gastrich") on December 17, 2024.

43. In the formal complaint submitted to Ms. Gastrich, Plaintiff reported that since his return from military service in October 2024, his portfolio was stripped and assigned to a replacement employee, Mr. Cape, who now held a duplicative title and job description, and that he was concerned the downgraded performance evaluation he received from Ms. Kleisner, in combination with the new "tenure based" promotion policy instituted by EDF, violated his rights under USERRA.

44. Defendant did not reply to Plaintiff's HR grievance before December 31, 2024.

45. On January 7, 2025, Plaintiff provided Ms. Gastrich with examples of other Environmental Defense Fund employees who returned from service, including leave for service with the U.S. State Department, and were properly reassigned to their prior work portfolios and responsibilities, or even promoted to more senior roles, as comparators to his situation under supervision of Ms. Kleisner.

46. Ms. Gastrich acknowledged Plaintiff's grievance on January 8, 2025.

47. Ms. Gastrich replied to Plaintiff's grievance on January 15, 2025, and asserted that the decision to retain Mr. Cape was immaterial to Plaintiff's grievance.

48. Defendant also claimed that Plaintiff's failure to accept an assignment with the China Counsel for International Cooperation on Environment and Development ("CCIED") could have contributed to his lower performance evaluation.

49. Plaintiff informed Defendant that he declined the CCIED assignment to protect his security clearance with the Department of Defense, not unwillingness to participate.

50. Plaintiff requested that Defendant provide clarity regarding who bore responsibility under USERRA for reinstating his portfolio, responsibilities, and grievance regarding hostile work environment based on his military service.

51. Plaintiff provided his military evaluations and awards to Defendant in support of his promotion under the Escalator Principle and merit on January 22, 2025.

52. Plaintiff again explained that he declined the CCIED to protect his security clearance, not a refusal to perform the work.

53. Plaintiff shared his military performance record and awards to Ms. Kleisner for reconsideration of his performance review and promotion qualifications on January 23, 2025.

54. Plaintiff escalated his grievance via email to Chief Administrative Officer and Executive Vice President Sean Cook ("Mr. Cook") and Chief Scientist Steve Hamburg ("Mr. Hamburg") on January 27, 2025.

55. Plaintiff documented for Mr. Cook and Mr. Hamburg his concerns of discrimination based on military status under USERRA, the confusion the duplicative duties caused in the work environment, and his good faith efforts to resolve the grievance submitted on December 17, 2025.

56. Mr. Cook replied to Plaintiff's email and escalated the grievance to Vice President of Human Resources Liz Mattila ("Ms. Mattila").

57. Between February 11, 2025, and February 15, 2025, Plaintiff and Ms. Mattila discussed defined responsibilities for the Marine Biogeochemical Scientist position and potential transfer of Plaintiff to a role that would not compete with Mr. Cape.

58. Ms. Mattila and Plaintiff provided Ms. Kleisner the prepared resolution plan for implementation and application to the work environment with Mr. Cape.

59. Plaintiff emailed Ms. Mattila on February 21, 2025, that the work environment under Ms. Kleisner had not improved since the proposed grievance resolution.

60. Plaintiff explained again that he felt unwelcome in his interactions with Ms. Kleisner and that his job duties and portfolio remained unclear.

61. Plaintiff explained that he would be required to search for other employment if no resolution to his USERRA grievance was applied in practice.

62. On or about February 22, 2025, Ms. Mattila proposed a meeting between herself, Plaintiff, and Ms. Kleisner, to discuss a plan to implement defined roles for Plaintiff and Mr. Cape along with resolving the hostile work environment.

9

63. Plaintiff provided Defendant his resignation notice on March 24, 2025, with an effective date of April 4, 2025.

64. Plaintiff cited Defendant's failure to reinstate his job duties and responsibilities, or reinstatement to a position of commensurate responsibility, and the hostile work environment harassment by Ms. Kleisner, as the basis of his separation.

65. Plaintiff emailed Ms. Mattila on March 26, 2025, to document the lack of remedies provided and implemented since his grievance.

66. Plaintiff explained that Ms. Kleisner's continued violation of USERRA by appropriating his work to another employee, and inhibiting his advancement under the Escalator Principle, and spreading gossip of poor performance created an environment where Plaintiff feared retaliation for exercising his rights.

67. On April 3, 2025, during Plaintiff's exit interview, Ms. Kleisner insisted that Plaintiff had been "checked out for months" as the basis for his performance rating and dissatisfaction.

68. During the exit interview, Ms. Kleisner asked Plaintiff if he would return to active-duty military service "since he seemed really happy there."

69. Ms. Kleisner denied that Mr. Cape's role and hiring during Plaintiff's military service was temporary.

70. On August 13, 2025, the State of Oregon's Office of Administrative Hearings for the Employment Division issued an Administrative Decision holding that Plaintiff "voluntarily left work with good cause" on the basis of Defendant's discrimination against him as a disabled veteran and Reservist. The ruling qualified Plaintiff for receipt of unemployment benefits from Defendant.

71. On October 31, 2025, Plaintiff through undersigned counsel served Defendant with a Confidential Offer of Compromise to resolve Plaintiff's claims.

72. Plaintiff and Defendant engaged in settlement negotiations between November 7, 2025, through February 4, 2026.

73. The parties reached an impasse to resolution in settlement negotiation on February 4, 2026, and Plaintiff had no other choice but to commence litigation.

74. Plaintiff alleges that his military service was unlawfully used as a penalty by Defendant regarding the CCIED assignment and his work portfolio.

75. Plaintiff alleges that he was penalized explicitly for his military service based on Ms. Kleisner's statements about his active-duty absence during the review period, and resulted in his constructive discharge, a sudden drop in his performance rating, duties and assignment of his portfolio.

**CAUSES OF ACTION AND CLAIMS**

**COUNT I- USERRA Reemployment Rights (38 U.S.C. § 4312)**

76. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-75, as if fully set forth herein.

77. Defendant denied Plaintiff advancement, reassigned essential job functions, privileges, and duties to a replacement employee, and constructively discharged him from employment, with Plaintiff's military service being a motivating factor in these adverse employment actions.

78. Defendants were aware of Plaintiff's military obligations throughout his employment and took adverse actions against him because of his military leave status.

79. Plaintiff alleges that Defendant's stated reasons for their actions are pretextual and inconsistent with their conduct toward similarly situated non-military Marine Biogeochemical Scientist

Mattias Cape regarding seniority and privileges of employment including job duties and major functions.

80. Plaintiff alleges that it was not standard practice for Defendant to hire a replacement employee during a permanent employee's protected leave period and then retain the temporary employee after the protected leave period.

81. Plaintiff's military status was the motivating factor in Defendant's actions and this was supported by Defendant's statements to Plaintiff

82. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including lost wages, lost benefits, lost promotional activities, and other compensatory damages in an amount within the jurisdictional limits of the court.

83. Defendant's conduct was willful, entitling Plaintiff to liquidated damages under 38 U.S.C. § 4323(d)(1)(C).

**COUNT II- USERRA Reemployment Rights (38 U.S.C. § 4312)**

84. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-83, as if fully set forth herein.

85. Plaintiff provided proper advance notice of his military service, served more than 180 days, was released under honorable conditions, and timely notified Defendant of his intent to return to work.

86. Defendant diminished Plaintiff's work responsibilities and portfolio upon his re-employment from active military service and transferred those responsibilities to a non-military replacement employee.

87. Defendant hired Plaintiff's temporary replacement as a full-time employee under the same job description and portfolio to replace Plaintiff and knowing there was insufficient work for both employees, after Plaintiff exercised his right to re-employment.

88. Defendant did not hire temporary replacements when other employees took protected leave between 2022 and 2025 or retain temporary replacements once the full time employee returned from protected leave.

89. Plaintiff was treated less favorably than similarly situated employees on protected leave by Defendant when his position and work portfolio was filled by a temporary employee.

90. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

## COUNT III- USERRA Rights and Benefits (38 U.S.C. § 4316(a))

91. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-90, as if fully set forth herein.

92. Defendant failed to provide Plaintiff with the privileges, rights, and benefits that Plaintiff was entitled to as determined by seniority including retention of his job duties, portfolio, and responsibilities were properly restored to him upon exercising his right to re-employment.

93. Defendant failed to provide Plaintiff with the seniority, rights, and benefits determined by seniority that Plaintiff would have attained if continuously employed, including promotions, pay increases, pension contributions, performance bonus(es), vacation accrual, and advancement opportunities.

94. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost compensation, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

## COUNT IV-USERRA Discharge Without Cause (38 U.S.C. § 4316(c))

95. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-94, as if fully set forth herein.

96. Plaintiff served on active duty for more than 180 days and was entitled to protection from discharge without cause for one year following reemployment.

97. Defendants constructively discharged Plaintiff within this protected period without cause, notice, or documentation of misconduct or business necessity.

98. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

## COUNT V-USERRA (38 U.S.C. § 4323(d)(1)(C))

99. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-95, as if fully set forth herein.

100. Defendant's violations of USERRA were willful, as Defendant knew or showed reckless disregard for whether their conduct was prohibited by USERRA, including violation of the escalator principle, discrimination based on military service, and reduction of work portfolios within the protected reemployment window.

101. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost benefits and other compensatory damages in an amount within the jurisdictional limits of the Court.

## COUNT VI- New York Military Leave and Reemployment Rights (NY MIL §317 and NY EXEC §§ 291-292, 296)

102. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-101, as if fully set forth herein.

103. Defendants discriminated against Plaintiff based on his membership and obligation of uniformed service because Plaintiff was ordered to perform military duty and failed to restore him to his employment with no loss of terms, conditions, or privileges of employment in violation of New York state laws including New York Military Law §317 and New York Human Rights Law §§291-292, 296.

104. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Collins respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Environmental Defense Fund and award the following relief:

A. Declare that Defendant Environmental Defense Fund violated Plaintiff James Collins' rights under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301–4325, including but not limited to 38 U.S.C. §§ 4311, 4312, and 4316, and of New York Military Law §317 and New York Human Rights Law §§291-292, 296, as set forth above.

B. Enjoin Defendant Environmental Defense Fund from further violating Plaintiff James Collins' rights under USERRA and of New York Military Law §317 and New York Human

Rights Law §§291-292, 296, and order Defendant to reinstate Plaintiff to the position, seniority, status, and pay he would have attained but for Defendant's unlawful conduct, or, in the alternative, award front pay in lieu of reinstatement.

C. Direct Defendant Environmental Defense Fund to make Plaintiff James Collins whole by awarding all lost wages, lost benefits, lost promotional opportunities, lost retirement contributions, and all other compensation and benefits to which Plaintiff is entitled to in a provable amount, including but not limited to:

(1) Compensatory damages, including but not limited to lost wages, lost benefits, and other pecuniary losses.

(2) Backpay for all lost wages, bonuses, differential pay, retirement-related losses, and other make-whole amounts recoverable under USERRA and related New York state laws from the earliest actionable date through the date of judgment.

(3) Front pay in lieu of reinstatement for a period sufficient to place Plaintiff in the position he would have occupied absent Defendant's unlawful conduct.

(4) Liquidated damages equal to the amount of lost wages and benefits due to Defendant's willful violations of USERRA and New York state law.

(5) Equitable relief included but not limited to reinstatement to the position, seniority, status, and benefits Plaintiff would have held under the USERRA "escalator" principle, or other appropriate injunctive and declaratory relief necessary to make Plaintiff whole.

(6) Pre-judgment and post-judgment interest as allowed by law.

(7) Reasonable attorney's fees and costs as permitted by USERRA and applicable New York state law.

(8) Such other and further legal and equitable relief as this Honorable Court deems just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: April 20, 2026.                    Respectfully Submitted,

/s/ *Carol Crossett*

Carol A. Crossett
Partner
Tully Rinckey PLLC
New York State Bar No4020038.
SDNY Bar No. CC2022
420 Lexington Ave., Ste 1601
New York, NY 10170
Ccrossett@tullylegal.com
Telephone: (646) 813-2966

*Counsel for Plaintiff, James Collins*

/s/

Sean C. Timmons, Esq., LL.M.
Managing Partner,
Tully Rinckey PLLC
Texas Bar No.: 24067908
New York State Bar No.: 5470190
Admitted to Practice in all Texas Federal Courts
18722 University Blvd., Ste. 235
Sugar Land, TX 77479
Stimmons@tullylegal.com
Telephone: (832) 240-3273
Cellphone: (281) 387-3411
Fax: (832) 241-5998
*Counsel for Plaintiff, James Collins*

/s/

Camille R. Tealer
Associate Attorney, *pro hac vice*
Tully Rinckey, PLLC
Texas Bar No.: 24150655
3420 Executive Center Drive, Suite 160
Austin, TX 78731

17

ctealer@tullylegal.com
Telephone: (512) 225-2806
Fax: (512) 225-2801
*Counsel for Plaintiff, James Collins*